IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| DIGITAL BASEMENT, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE |
| | ) | |
| v. | ) | NO. 14-cv-04069-SCJ |
| | ) | |
| CHRISTOPHER GORDON, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS OR TRANSFER VENUE**

Charles H. Hooker, III
Georgia Bar No.: 375622
Michael J. Breslin
Georgia Bar No. 142551
rhenn@kilpatricktownsend.com
chooker@kilpatricktownsend.com
mbreslin@kilpatricktownsend.com

KILPATRICK TOWNSEND
  & STOCKTON LLP
1100 Peachtree St. NE, Suite 2800
Atlanta, Georgia 30309
404.815.6500 (main)
404.815.6555 (facsimile)

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ............................................................................1

II.  FACTUAL BACKGROUND .........................................................3

    A.   Digital Basement's activities relevant to this dispute ..................3

    B.   Gordon's activities relevant to this dispute ...................................4

        1.   Gordon's marketing and sales activities directed at Georgia. .................................................................................4

        2.   Gordon's licensing and manufacturing activities directed into Georgia. ..........................................................5

        3.   Gordon's nationwide campaign of threats and lawsuits against retailers who sold products bearing the Phrase. .....7

    C.   Gordon's repeated and unfulfilled threats of "immediate litigation" against Digital Basement ...............................................7

    D.   The rights at issue in Digital Basement's claims ..........................9

III.  ARGUMENT AND CITATION TO LEGAL AUTHORITY ................. 10

    A.   Legal standard and procedure for resolving motion to dismiss asserting lack of personal jurisdiction .......................... 10

        1.   The Georgia Long-Arm Statute ......................................... 11

        2.   Federal Due Process .......................................................... 11

    B.   Digital Basement's amended complaint sets forth a *prima facie* case for exercising jurisdiction over Gordon .............................. 12

        1.   The long-arm statute applies to Gordon because he transacts business in Georgia. .......................................... 12

        2.   Gordon has sufficient minimum contacts with Georgia and has availed himself of the right to conduct business in Georgia. .......................................................... 12

        3.   Digital Basement's claims are related to Gordon's contacts with Georgia. ....................................................... 14

        4.   Gordon relies on inapposite and unpersuasive authority. 19

    C.   Gordon fails to present a compelling case for why exercising jurisdiction over him would be unreasonable .............................. 21

     D.    There is no merit to Gordon's allegations of improper venue ..... 23

     E.    Digital Basement did not file this lawsuit in anticipation of
           Gordon's threatened litigation ...................................................... 25

IV.    CONCLUSION.......................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*Akro Corp. v. Luker,*
   45 F.3d 1541 (Fed. Cir. 1995) ..................................................... 18, 19, 21

*Breckenridge Pharmaceutical, Inc. v. Metabolite Labs., Inc.,*
   444 F.3d 1356 (Fed. Cir. 2006) ............................................. 17, 18, 19, 21

*Burger King Corp. v. Rudzewicz,*
   471 U.S. 462 (1985) ..................................................................... 12, 13, 22

*Calder v. Jones,*
   465 U.S. 783 (1984) .................................................................................. 14

*Delong Equip. Co. v. Washington Mills Abrasive Co.,*
   849 F.2d 843 (11th Cir. 1988) ................................................................. 10

*Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.,*
   593 F.3d 1249 (11th Cir. 2010) ..................................................... 11, 12, 22

*Genetic Implant Sys., Inc. v. Core-Vent Corp.,*
   123 F.3d 1455 (Fed. Cir. 1997) ..................................................... 18, 19, 21

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
   466 U.S. 408 (1984) .................................................................................. 15

*Illinois v. Hemi Grp. LLC,*
   622 F.3d 754 (7th Cir. 2010) ................................................................... 14

*Imageline, Inc. v. Fotolia LLC,*
   663 F. Supp. 2d 1367 (N.D. Ga. 2009) ................................................... 23

*In re Ricoh Corp.,*
   870 F.2d 570 (11th Cir. 1989) ................................................................. 24

*Innovative Clinical & Consulting Serv., LLC v.*
   *First Nat'l Bank of Ames, Iowa,*
   279 Ga. 672 (2005) ................................................................................... 11

*Int'l Shoe Co. v. Washington,*
   326 U.S. 310 (1945) ............................................................................ 11, 12

*Licciardello v. Lovelady,*
   544 F. 3d 1280 (11th Cir. 2008) ..................................................................14

*Madara v. Hall,*
   916 F.2d 1510 (11th Cir. 1990) ..................................................................19

*Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.,*
   288 F.3d 1254 (11th Cir. 2002) ..................................................................11

*Oldfield v. Pueblo De Bahia Lora, S.A.,*
   558 F.3d 1210 (11th Cir. 2009) .................................................... 15, 19, 20

*Rice v. PetEdge, Inc.,*
   975 F. Supp. 2d 1364 (2013) ............................................................. passim

*Tanga.com LLC v. Gordon,*
   2015 WL 533264, No. CV-14-01871-PHX-GMS (D. Az. Feb. 9, 2015) 16,
   19, 20, 21

*United Drug Co. v. Theodore Rectanus Co.,*
   248 U.S. 90 (1918) ......................................................................................16

*Vest v. Waring,*
   565 F. Supp. 674 (N.D. Ga. 1983) ..............................................................10

*World–Wide Volkswagen Corp.,*
   444 U.S. at 297,
   100 S.Ct. 580 ..................................................................................... 14, 17

## Statutes

28 U.S.C. § 1391 ................................................................................. 23, 24

28 U.S.C. § 1404 ......................................................................................24

O.C.G.A § 9–10–91 ..................................................................................11

Pursuant to LR 7.1(B), Plaintiff Digital Basement LLC files this opposition to the Motion to Dismiss or Transfer Venue (ECF No. 11) filed by Defendant Christopher Gordon, and shows the Court as follows:

## I.   INTRODUCTION

This case arises from Defendant Gordon's manufacturing, marketing, licensing and sale of his products in Georgia.  Gordon claims to hold enforceable rights in Georgia as a result of these activities.  These purported rights are the subject of Digital Basement's claims in this action.

The products at issue are apparel (namely, t-shirts) and accessories (namely, cellular telephone cases) bearing the phrase "honey badger don't care" (the "Phrase").  Gordon claims exclusive copyright and trademark rights in the Phrase.  Gordon asserts those rights arise from his extensive promotion in Georgia of his products bearing the Phrase, which has caused Georgia consumers to identify Gordon as the sole source of such products.

Digital Basement began selling its own products bearing the Phrase in September 2011, *before* Gordon applied to register the Phrase as a trademark and without knowledge that any party claimed rights in the Phrase.  When Digital Basement learned Gordon claimed rights in the Phrase, it unilaterally ceased selling these products, well before Gordon sent any demand.  Gordon now claims Digital Basement's prior sales infringed his rights.

Gordon's motion asserts he is immune to jurisdiction in this Court because his Georgia contacts are limited to the sales he conducted through his website.  The precedent of this Court squarely rejects Gordon's argument. It is well settled that a defendant who transacts sales in Georgia via an interactive website has purposefully availed himself of the right to conduct business in Georgia, and therefore is on notice he may be sued in Georgia.

Furthermore, Gordon's argument *grossly* understates his contacts with this forum.  As alleged in the First Amended Complaint, Gordon does not merely sell his products in Georgia – he also directs the manufacturing of his products in Georgia and licenses third parties to sell his products in Georgia. These Georgia sales have been consummated through both interactive retail websites and a wholesale relationship with at least one retailer, Zoo Atlanta. Thus, Gordon's Georgia contacts far exceed the threshold this Court has applied in similar cases for exercising jurisdiction over a non-resident.

Gordon next argues jurisdiction is improper because Digital Basement's claims do not "relate to" his contacts with Georgia.  However, Gordon himself alleges that his purported rights in the Phrase – the exact subject of Digital Basement's claims here – arise from his "substantial" promotion and sale of these same products in Georgia.  Accordingly, Gordon cannot seriously contend his Georgia contacts are unrelated to Digital Basement's claims.

2

Moreover, Gordon maintains *ongoing contractual obligations* with respect to his licensee's and manufacturer's *operations in Georgia* concerning *the products and rights at issue in this action*.  For example, Gordon has agreed to indemnify his licensee against claims arising in Georgia related to his rights in the products his licensee sells in Georgia – the same rights that are the subject of Digital Basement's claims here.  The federal courts hold that such obligations are "clearly related to" declaratory claims concerning the defendant's alleged rights, and satisfy the constitutional requirements for exercising jurisdiction over a non-resident.  In short, Gordon's argument that Digital Basement's claims are unrelated to his Georgia contacts is at odds with both the allegations in the Amended Complaint and settled federal law.

## II.   FACTUAL BACKGROUND

### A.   Digital Basement's activities relevant to this dispute

Digital Basement is a family-owned-and-operated limited liability company, with its principal office in Roswell, Georgia.  FAC ¶ 3.  Since at least 2011, Digital Basement has done business as "SnorgTees" and operated the website www.snorgtees.com, where it sells humorous t-shirts, apparel and accessories.  *Id.*  All of Digital Basement's products feature ornamental and/or humorous designs originally-created by Digital Basement.  March 15, 2015 Declaration of Matthew Walls ("Walls Decl.") ¶ 2.

In early 2011, the Phrase became a popular Internet meme, and began appearing in countless online posts and publications by Internet users.  FAC ¶¶ 44-45, 48.  Thereafter, the Phrase began appearing on products sold by hundreds of retailers and online vendors, in a variety of designs and formats. *Id.*  On or around September 26, 2011, Digital Basement began selling its own apparel bearing the Phrase.  *Id.* at ¶ 46.  When Digital Basement began selling these products, no one had attempted to register the Phrase as a trademark, or otherwise claimed exclusive rights in the Phrase.  *Id.*

In May of 2014, Digital Basement learned through its own efforts that Gordon had been issued trademark registrations in the Phrase.  Walls Dec. ¶ 8.  *Within 48 hours*, Digital Basement had disabled its website's sale of products bearing the Phrase, and removed same from its website.  *Id.* at ¶ 9.

### B.    Gordon's activities relevant to this dispute

#### 1.    Gordon's marketing and sales activities directed at Georgia.

In February 2012, *five months after* Digital Basement began selling the products at issue, Gordon launched a website titled "Randall's Honey Badger."  FAC ¶ 9.  Since its launch, Gordon's website has continuously marketed, offered and sold in Georgia Gordon's shirts bearing the Phrase.  *Id.* Gordon's website is "interactive" – it prompts Georgia's residents to choose the products they want, accepts payment information, and completes their

4

purchases.  *Id.* at ¶¶ 11-13.  Gordon alleges his sales have been "substantial, with a majority of the sales occurring via the Internet."[1]  Gordon's website contains no terms of use – it does not state that its use is governed by the laws of, or disputes must be resolved in, any particular state. *Id.* at ¶ 14.[2]

2. <u>Gordon's licensing and manufacturing activities directed into Georgia.</u>

Gordon also maintains licensing agreements with at least two entities to market and sell, in Georgia, his products:  Duck Co. (selling Gordon's t-shirts) and Zazzle.com (selling Gordon's cellular phone cases).  FAC ¶¶ 18-21. Zazzle is the sole licensee for Gordon's cellular phone cases.  *Id.* at ¶ 21. Gordon's website provides hyperlinks to his licensees' sites, and encourages Georgia consumers to purchase his products from his licensees.  *Id.* at ¶ 10, Ex. 2 (Gordon's website states "For officially licensed Honey Badger Don't Care clothing, find even more great gifts at Duck Co.," and "visit the The [sic] Official Randall's Honey Badger Zazzle Shop . . . Don't be stupid, Silly"). Through both of these licensing arrangements, Gordon has conducted

---

[1] *See* Dec. 29, 2014 Complaint filed by Gordon in the Central District of California at ¶ 14, attached as Exhibit 5 to Feb. 6, 2015 Declaration of Charles H. Hooker, III filed in this case (ECF No. 7) (hereinafter, the "2nd Filed Complaint").

[2] Gordon also markets his products in Georgia through various interactive social media platforms, as well as an interactive mobile "app," that he makes available to Georgia consumers.  FAC ¶¶ 36-38.

5

additional sales and marketing of the products at issue to Georgia residents, including wholesale sales to Zoo Atlanta from 2012-2014. *Id.* at ¶ 19.

Through Zazzle, Gordon selected Case-Mate, Inc. – *located in Norcross, Georgia* – to manufacture his phone cases bearing the Phrase. FAC ¶¶ 22-23. Gordon had the option to select only manufacturers outside of Georgia, but elected not to do so. *Id.* at ¶ 26. Instead, he purposefully instructed Zazzle to have Case-Mate manufacture, and then sell, *over two-hundred* separate lines of phone cases for him in Georgia. *Id.* at ¶¶ 24-28. Many of these cases bear the Phrase and are a significant source of the rights he claims. *Id.* at ¶ 25.

Gordon's license agreement with Zazzle.com also goes well beyond the mere payment of royalties to Gordon. Gordon has the right to direct which products, and which colors and designs, are manufactured and sold in Georgia. FAC ¶ 29. Gordon also agreed to indemnify Zazzle for claims arising from its sale of Gordon's products in Georgia. *Id* at ¶ 30.

Gordon's agreement with Zazzle further creates contractual obligations *to Case-Mate, a Georgia corporation*. Gordon agreed to release Case-Mate from responsibility for the phone case designs it manufactures in Georgia – the same designs that serve as <u>*the basis for*</u> Gordon's claim that he owns trademark rights in the Phrase for phone cases. *Id.* at ¶ 31. That same manufacturing is also governed by a contract between Gordon's licensee

6

(Zazzle) and Case-Mate in Georgia.  *Id.* at ¶ 32.  Gordon receives substantial revenue from Georgia's consumers through these Georgia relationships.  *Id.*

     3.  <u>Gordon's nationwide campaign of threats and lawsuits against retailers who sold products bearing the Phrase.</u>

Beginning around July 2014, Gordon launched a nationwide campaign of serving demand letters and filing identical boilerplate complaints against "unauthorized" retailers who had sold products bearing the Phrase.  FAC ¶ 65.  Gordon's campaign literally reaches to the four corners of the country, and includes legal actions with retailers in, among other states, Washington, New York, Arizona and Florida.  *Id.* at ¶ 66.  In these lawsuits, Gordon asserts he has obtained exclusive rights in the Phrase in every jurisdiction, because his nationwide promotion and sale of his products has caused the general "public" to associate the Phrase solely with Gordon.  *Id.*

**C.    Gordon's repeated and unfulfilled threats of "immediate litigation" against Digital Basement**

On July 25, 2014, months after Digital Basement unilaterally ceased selling the products at issue, Digital Basement received the first of several unfulfilled threats by Gordon to commence "immediate litigation."  FAC ¶¶ 67-68, Ex. 12.  His first letter required compliance, by August 1, with thirteen separate demands, or else "Gordon will have no alternative but to commence litigation against your company without any further notice."  *Id.*  Digital

7

Basement responded, explained its position and declined to comply with Gordon's demands. *Id.* at ¶ 69, Ex. 13. Gordon did not commence litigation.

On August 4, 2014, Gordon's second demand letter repeated his threat, stating that if Digital Basement did not comply with his demands, "Mr. Gordon will forthwith pursue all of his rights and remedies against you and your company without further notice." *Id.* at ¶ 71, Ex. 14. Digital Basement responded on August 14, 2014, thoroughly explained its position, and again did not agree to Gordon's demands. *Id.* at ¶¶ 72-74. Gordon did not file suit.

*Over four months later*, on December 18, 2014, Gordon sent his third demand, stating Digital Basement must agree, by December 22, to execute a tolling agreement to preserve Gordon's purported claims. FAC ¶ 75-76, Ex. 16. This third demand stated that, if Digital Basement failed to do so, Gordon "will be forced to immediately commence litigation." *Id.* Digital Basement did not respond by December 22, and did not agree to sign a tolling agreement. *Id.* at ¶ 76. Again, Gordon did not commence litigation.

Following this third unfulfilled promise to "commence immediate litigation without further notice," Digital Basement sought to be free from the harassment of Gordon's hollow threats, which at that point had carried on for nearly half a year. Walls Decl. ¶ 14. Accordingly, Digital Basement filed this action seeking a declaration that it had not infringed Gordon's rights. Six

8

days later, Gordon filed his competing lawsuit in California – the same

lawsuit he had been threatening to file since July of 2014.

### D.    The rights at issue in Digital Basement's claims

In his Second-Filed Complaint, Gordon describes the genesis of the

rights that are the subject of Digital Basement's claims.  Gordon alleges they

arise from the "significant amount of time and effort" he expended "making

[the Phrase] well-known to the public."  2nd Filed Compl. ¶ 16.  He alleges

these efforts were in the form of "extensive advertisements, promotions [and]

sales" and that he "primarily advertised [the products at issue] on the

internet" – all of which he directed into Georgia.  *Id.* at ¶¶ 17, 14.

Gordon contends that "as a result of" these activities, "the public" –

including Georgia's consumers – have "come to exclusively identify the

[Phrase] with [Gordon]."  *Id.* at ¶ 17.  Particularly with respect to his phone

cases – *for which Gordon holds no federal trademark registration[3]* – Gordon's

own allegations demonstrate that the rights at issue in Digital Basement's

claims are born out of the marketing and sales activities he directed into

Georgia and, specifically, the alleged "mental association" his activities have

created in the minds of Georgia's residents.

---

[3] FAC ¶ 50.

9

## III. ARGUMENT AND CITATION TO LEGAL AUTHORITY

### A. Legal standard and procedure for resolving motion to dismiss asserting lack of personal jurisdiction

The procedure for resolving a motion to dismiss for lack of personal jurisdiction is well settled in this Circuit.  Where no evidentiary hearing is held, "the plaintiff must present only a prima facie showing of venue of personal jurisdiction."  *Delong Equip. Co. v. Washington Mills Abrasive Co.*, 849 F.2d 843, 845 (11th Cir. 1988).  The facts alleged in the complaint are taken as true, to the extent uncontroverted by defendant's affidavits.  *Id.* When undertaking the jurisdictional analysis, "[a]ll pleadings and affidavits introducing evidence relating to jurisdictional facts are to be construed in the light most favorable to plaintiff."  *Vest v. Waring*, 565 F. Supp. 674, 693 (N.D. Ga. 1983).  Likewise, "[a]ny conflict of evidence must be construed in favor of plaintiff."  *Rice v. PetEdge, Inc.*, 975 F. Supp. 2d 1364, 1367-68 (2013).

Applying these presumptions, this Court explains the jurisdictional inquiry as follows:

> A two-step analysis governs whether a federal court can exercise personal jurisdiction over a non-resident defendant.  First, the court must determine whether the long-arm statute of its forum state allows for the exercise of personal jurisdiction.  If so, the court must then ascertain whether exercising jurisdiction comports with federal due process.

*PetEdge*, 975 F. Supp. 2d at 1368 (citing *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1254, 1269 (11th Cir. 2002)).

## 1. The Georgia Long-Arm Statute

Federal courts must interpret a state's long-arm statute in the same manner as the state supreme court. *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1258 (11th Cir. 2010). Georgia's long-arm statute allows for personal jurisdiction over a nonresident who transacts "any business" within Georgia. O.C.G.A § 9–10–91. "The Georgia Supreme Court has required that this language be construed literally." *PetEdge*, 975 F. Supp. 2d at 1367 (citing *Innovative Clinical & Consulting Serv., LLC v. First Nat'l Bank of Ames, Iowa*, 279 Ga. 672, 675 (2005)). Thus, a defendant need not be physically present in Georgia to satisfy the statute; "[t]ransacting 'any business' by mail, telephone, or the internet will suffice." *Id.* (citing *Diamond Crystal,* 593 F.3d at 1264). Where a defendant admits he has made internet sales in Georgia, "the plain language of the Georgia long-arm statute permits the Court to exercise personal jurisdiction over defendant." *Id.*

## 2. Federal Due Process

The due process inquiry requires that a defendant have sufficient "minimum contacts" with the forum. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). In addition to minimum contacts, exercising jurisdiction

11

over the defendant must comport with "traditional notions of fair play and

substantial justice." *Id.* These "traditional notions" focus on whether a

"defendant has 'fair warning' that it might be sued in the forum state."

*PetEdge*, 975 F. Supp. 2d at 1369 (quoting *Burger King Corp. v. Rudzewicz*,

471 U.S. 462, 472 (1985)). In the context of specific jurisdiction, when a

defendant purposefully avails itself of contacts with the forum and a

"sufficient nexus" exists between those contacts and the plaintiff's claims, the

defendant has the requisite "fair warning." *Id.*

**B.     Digital Basement's amended complaint sets forth a *prima
         facie* case for exercising jurisdiction over Gordon**

    1.   <u>The long-arm statute applies to Gordon because he transacts
         business in Georgia.</u>

As set forth in the Amended Complaint, Gordon manufactures,

promotes, sells and licenses for sale the products at issue in Georgia, and

derives revenue from Georgia through these activities. FAC ¶¶ 7-37.

Accordingly, the Georgia long-arm statute applies to Gordon because he

"transacts business" in this state. *Diamond Crystal*, 593 F.3d at 1264.

    2.   <u>Gordon has sufficient minimum contacts with Georgia and has
         availed himself of the right to conduct business in Georgia.</u>

The Amended Complaint establishes Gordon has purposefully availed

himself of the right to conduct business in this state, because he voluntarily

reaches into Georgia to manufacture and sell products bearing the Phrase. FAC ¶¶ 7-37. Thus, Gordon has sufficient minimum contacts with Georgia to satisfy federal due process requirements. *See Burger King*, 471 U.S. at 462 (cornerstone of purposeful availment is that defendant's activities are "purposefully directed" toward residents of forum).

Gordon argues he does not purposefully direct his activities into Georgia because his only contacts with Georgia are his sales through his website. Motion at 19-20 (claiming such sales "are insufficient to show Gordon purposefully established contacts with Georgia"). Gordon similarly argues he does not target any "advertising toward Georgia." *Id.* at 11.

Putting aside that Gordon's Georgia contacts clearly <u>*are not*</u> limited to his website's activities,[4] this Court has flatly rejected Gordon's precise argument. As the Honorable Julie Carnes explained in *PetEdge*, an online retailer may not "have his cake and eat it too" by obtaining revenue through internet sales to Georgia while simultaneously claiming it has not availed itself of the right to conduct business in Georgia:

> Defendant's creation of a website that allows Georgia customers to directly purchase its products constitutes purposeful availment, as defendant financially benefits from doing business in Georgia . . . *If defendant wished to avoid litigation in Georgia, it could have organized its website so that it wasn't selling its products in this*

---

[4] *See* §§ II.B.2, II.C, *supra*.

13

> *state. World–Wide Volkswagen Corp.,* 444 U.S. at 297, 100 S.Ct.
> 580 (stating that defendants can restructure their business if they
> wish to avoid the possibility of a lawsuit in a certain forum).
> *Having instead opened itself up for business in Georgia through its
> website, defendant cannot now argue that its low level of sales or
> lack of ads in the state negates purposeful availment of the state's
> benefits and privileges.*  As the Seventh Circuit pointed out, a
> defendant making this argument "wants to have its cake and eat
> it, too:  it wants the benefit of a nationwide business model with
> none of the exposure."  *Illinois v. Hemi Grp. LLC,* 622 F.3d 754,
> 760 (7th Cir. 2010).  Defendant's act of making sales through its
> website directly to Georgia customers more than compensates for
> the lack of any targeted ads or marketing.

*PetEdge*, 975 F. Supp. 2d at 1371-72 (emphasis supplied).[5]  Because Gordon

purposefully availed himself of the right to conduct business in Georgia, he is

on notice the he may be sued in Georgia and is subject to jurisdiction here.

*Id.* at 1371 (citing *World-Wide Volkswagen*, 444 U.S. at 297 (1980)).

      3.  <u>Digital Basement's claims are related to Gordon's contacts
          with Georgia.</u>

The Eleventh Circuit has not adopted any specific approach to

determining "relatedness" between a plaintiff's claims and a defendant's

forum contacts.  *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1222

---

[5] Gordon also makes reference to the "effects test" articulated in *Calder v.
Jones*, 465 U.S. 783 (1984), arguing the test signals an absence of sufficient
Georgia contacts.  *See* Motion at 19, 20.  As the Eleventh Circuit explained,
the *Calder* effects test applies in *intentional tort* cases to provide a basis for
jurisdiction when the defendant "has no other contacts with the forum."
*Licciardello v. Lovelady*, 544 F. 3d 1280, 1285 (11th Cir. 2008).  Since this is
not an intentional tort case and Gordon plainly has other contacts with
Georgia, the *Calder* test clearly has no application here.

(11th Cir. 2009).  Thus, the inquiry turns on a fact-intensive analysis of the "relationship among 'the defendant, the forum and the litigation.'"  *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

In his Second-Filed Complaint, Gordon alleges that the rights at issue in Digital Basement's claims arise from the "extensive" activities he directed into Georgia, and the resulting "mental association" he created in the minds of Georgia's consumers.  *See* §§ II.B.1-2, *supra*.  Thus, on their face, Digital Basement's claims are plainly "related to" Gordon's contacts with Georgia.

Nonetheless, Gordon argues that, of all his extensive contacts with Georgia, only his demand letters directed into this state should be deemed "related to" these claims.  Motion at 15-18.  Gordon is incorrect, and takes a far too narrow view of both the nature of Digital Basement's claims and his Georgia contacts that the federal courts deem "related to" those claims.  This lawsuit does not merely seek a declaration concerning the allegations in Gordon's letters.  Rather, Count I of Digital Basement's complaint challenges the *genesis and existence* of Gordon's purported rights, and seeks to cancel Gordon's trademark registrations in the Phrase.  By definition, Count I concerns whether Gordon has in fact developed  "secondary meaning" in the Phrase by creating a mental association in Georgia's consumers between

15

Gordon and the Phrase.  Because Gordon contends this mental association *resulted from* extensive activities he directed into Georgia, he cannot plausibly argue Count I does not "relate to" his contacts with this forum. Indeed, Gordon sought to develop these same rights in Georgia by causing his licensee (Duck Co.) to enter into a two-year wholesale relationship with Zoo Atlanta for the retail sale of Gordon's "officially-licensed" apparel.  FAC ¶ 19.

The relationship between Gordon's Georgia contacts and these claims is even greater with respect to the "phone case" rights at issue here.  Unlike his other products, Gordon has no trademark registration for phone cases.  Any rights he asserts must therefore be premised on his common law rights related to his phone cases, which are necessarily based on territorial use.[6]

Counts II and III in this action address the enforceability of these "phone case" rights, and there is <u>no forum</u> *with a greater connection to both Gordon and Digital Basement's claims concerning these "phone case" rights than Georgia.*  Unlike the *Tanga* case, which focused on Gordon's book signing and one-time appearance on a radio show in Arizona, Gordon manufactures his phone cases in Norcross, Georgia through Case-Mate, a Georgia corporation.  Also unlike *Tanga* and the other cases Gordon cites,

---

[6] *See United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97-98 (1918) (foundational Supreme Court opinion establishing that trademark rights in a particular region *only* derive from the *actual use* of the mark in that region).

Gordon's ability to promote and sell his phone cases – *i.e.*, the basis for the rights at issue here – relies upon a manufacturing contract between his *sole* phone case licensee (Zazzle) and his phone case manufacturer, Case-Mate in Georgia.  In exchange for the benefit he receives from that contract, Gordon agrees to indemnify Zazzle for claims concerning its Georgia sale, or Case-Mate's Georgia manufacturing, of his phone cases.  Gordon further agrees to release Case-Mate from liability for the content of the phone case designs it manufactures for him in Georgia.  Under these facts, Gordon cannot plausibly claim he had "no reasonable anticipation" of one day having to answer claims in Georgia concerning those same phone case designs.  See *World-Wide Volkswagen, 444 U.S. at 297* ("reasonable anticipation" is hallmark of relatedness inquiry under due process analysis).

In fact, the Federal Circuit consistently holds these Georgia contacts are precisely the type of "other activities" beyond the issuance of cease-and-desist letters that authorize jurisdiction over a non-resident in a declaratory judgment action.  In *Breckenridge Pharmaceutical, Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356 (Fed. Cir. 2006), the court reversed the dismissal of the non-resident patent holder, stating "the district court erred in concluding [defendant's cease-and-desist] letters represented the extent of its contacts with Florida." *Breckenridge*, 444 F.3d at 1363.  The court found jurisdiction

17

existed because the defendant's agreement with its licensee operating in

Florida created continuing obligations that might impact Florida and were

related to the rights addressed in Plaintiff's declaratory claims. *Id.* at 1366-

67. Likewise, in *Akro Corp. v. Luker*, 45 F.3d 1541 (Fed. Cir. 1995), the court

held the defendant's agreement with its Ohio licensee on how to resolve

claims concerning the licensed patent was an Ohio contact that "undoubtedly

relates to [plaintiff's] challenge to the validity and enforceability of

[defendant's] patent." *Akro*, 45 F.3d at 1548-49. In *Genetic Implant Sys., Inc.*

*v. Core-Vent Corp.*, 123 F.3d 1455 (Fed. Cir. 1997), the Federal Circuit

clarified that the defendant's licensee need not be headquartered in the

forum to exercise jurisdiction, but need only transact business there. *Genetic*

*Implant*, 123 F.3d at 1459. That case held that, because the licensee

operated in the forum, the defendant's *promise to indemnify* the licensee for

third party claims concerning the licensed rights was a contact "clearly

related to" the plaintiff's declaratory judgment claims. *Id.* These cases

demonstrate that Gordon's ongoing dealings with both Zazzle and Case-Mate

are purposeful contacts with Georgia that "clearly" and "undoubtedly" relate

to Digital Basement's claims in this action. *Akro*, 45 F.3d at 1548-49; *Genetic*

*Implant*, 123 F.3d at 1459.

18

4.  <u>Gordon relies on inapposite and unpersuasive authority.</u>

To support his claim that his Georgia contacts are unrelated to this case, Gordon points to the opinions in *Madara*, *Oldfield*, and the District of Arizona's order in his lawsuit with *Tanga.com*.  A review of these opinions shows they are plainly distinguishable from this case.  Moreover, the forum contacts in those cases did not remotely approach the level or nature of Gordon's contacts with Georgia, which *Breckenridge*, *Akro* and *Genetic Implant* each explained are "clearly related" to Digital Basement's claims.

*Madara* was a Florida case asserting libel against the defendant (a famous musician), based on a telephone interview the defendant gave to a magazine while in New York.  *Madara*, 916 F.2d 1510, 1513 (11th Cir. 1990). The magazine published an article quoting the defendant, and the magazine was sold in Florida, where the plaintiff resides.  The defendant had no other connections to the magazine, *and had no role in or control over the magazine's distribution in Florida.  Id.* at 1519.  *Madara* held exercising jurisdiction would violate due process because "[s]imply giving an interview to a reporter is not enough to cause [defendant] to anticipate being haled into court in Florida."  *Id.*  Unlike the *Madara* defendant, Gordon purposefully directs his activities into Georgia.  On that basis alone, *Madara* is inapposite.

19

*Oldfield* fares no better.  The *Oldfield* plaintiff attempted to sue a Costa Rican defendant in Florida for injuries he sustained on a third-party fishing charter while vacationing at defendant's Costa Rican resort.  *Oldfield*, 558 F.3d at 1214.  The plaintiff argued jurisdiction was proper because he booked his room through defendant's website while he was in Florida.  *Id.* at 1223.  *Oldfield* held that exercising jurisdiction under such tenuous facts "would interpret the [relatedness] requirement so broadly as to render it virtually meaningless."  *Id.* at 1223-24.  Unlike *Oldfield*, Gordon's Georgia contacts are the basis for the rights at issue in this case, and Gordon maintains ongoing contractual obligations in Georgia concerning those rights. Accordingly, *Oldfield* is inapposite and has no persuasive value here.

The District of Arizona's order in Gordon's lawsuit with Tanga.com is likewise unpersuasive, as Gordon maintains far greater and fundamentally different contacts with Georgia than Arizona.  *See Tanga.com LLC v. Gordon*, 2015 WL 533264, No. CV-14-01871-PHX-GMS (D. Az. Feb. 9, 2015).  Unlike Arizona, Gordon directs the manufacturing in Georgia of the phone cases that are the subject of Digital Basement's claims.  Gordon also has ongoing obligations to Case-Mate (the Georgia corporation manufacturing his phone cases) with respect to claims in Georgia addressing Gordon's alleged "phone case" rights – the same rights at issue in Digital Basement's claims here.

20

Notably, the *Tanga* Order also determined that Gordon's single cease-and-desist letter was his "only contact" with Arizona related to *Tanga's* claims. *Id.* at *3. As each of the courts in *Breckenridge, Akro* and *Genetic Implant* explained, that is not the case here. Those cases illustrate Gordon's obligation to indemnify his licensee for claims based on its Georgia sale of the licensed products is a contact that "clearly" and "undoubtedly" relates to Digital Basement's "challenge to the validity and enforceability" of Gordon's rights in the products. *Akro*, 45 F.3d at 1548-49; *Genetic Implant*, 123 F.3d at 1459. Accordingly, *Tanga* is inapposite and not persuasive.

## C. Gordon fails to present a compelling case for why exercising jurisdiction over him would be unreasonable

Courts look to five "fairness factors" to determine whether exercising jurisdiction is reasonable: (1) the burden on the defendant of litigating in the forum, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) states' shared interest in furthering fundamental social policies. *PetEdge*, 975 F. Supp. 2d at 1372. Where sufficient minimum contacts exist, it is the defendant's burden to "present a compelling case" that

21

the exercise of jurisdiction would be unreasonable. *Burger King Corp.*, 471 U.S. at 477. Gordon cannot meet that burden.

As to the first factor, Gordon argues he has less money than Digital Basement, and it is more burdensome on him to litigate in Georgia than for Digital Basement to litigate in California. Motion at 22. Digital Basement, however, is a small, family-operated company, and would feel the burden of litigating in California just as much as Gordon would feel the burden of litigating here. Walls Decl. ¶¶ 3-4. Thus, this factor does not favor any party. The same is true for Gordon's claim that his evidence is in California, since all of Digital Basement's witnesses and evidence are in Georgia. *Id.* at ¶ 5; *see* Motion at 23; *PetEdge*, 975 F. Supp. 2d at 1372-73 (rejecting identical argument, stating "[a]s plaintiff's witnesses and documents are presumably in Georgia, this factor does not support a finding of unreasonableness.").

Neither do the other factors suggest that litigating this case in Georgia would be unreasonable. "Georgia has a manifest interest in providing effective means of redress for its residents." *Diamond Crystal*, 593 F.3d at 1274 (requiring California defendant to litigate in Georgia) (internal quotation omitted). Gordon's motion offers nothing to suggest California has a greater interest in adjudicating Gordon's infringement claims than Georgia has in adjudicating Digital Basement's claims concerning the same rights at

22

issue.[7]  Nor does Gordon provide any facts suggesting these claims would be resolved more efficiently in California than Georgia.  As Judge Carnes explained in *PetEdge*, addressing similar claims:

> Presumably Georgia and Massachusetts have an equally strong interest in ensuring that commercial actors abide by their statutory and common law rules regarding trade practices, and there is no reason to believe that the litigation would be resolved more efficiently in Massachusetts than in Georgia.

*PetEdge*, 975 F. Supp. 2d at 1373.  The same is true here.  In sum, each of the arguments Gordon makes for the reasonableness of a California forum apply equally to establish the reasonableness of Georgia as the forum for this dispute.  Gordon therefore has not met his burden to present a "compelling case" as to why proceeding in Georgia is constitutionally unreasonable.

## D.    There is no merit to Gordon's claims of improper venue

Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper where a substantial part of the events giving rise to the case took place.  In this case, all of Gordon's efforts to develop and enforce his rights at issue in this case – his manufacturing, advertising, sale, and licensing of the products at issue, and

---

[7] Gordon cites *Imageline, Inc. v. Fotolia LLC*, 663 F. Supp. 2d 1367 (N.D. Ga. 2009) to support his claim that Georgia has no interest in this case because no injury was suffered here.  Motion at 22.  *Imageline*, however, addressed a "copyright dispute between a Virginia corporation and a Delaware corporation with its headquarters in New York," and did not involve a Georgia resident.  *Imageline*, 663 F. Supp. 2d at 1379.

his threats of litigation – occurred in this district.  Gordon's motion offers no specific arguments as to why venue is not proper pursuant to 28 U.S.C. § 1391(b)(2), and his request to dismiss for improper venue should be denied.

The same is true for Gordon's request to transfer venue to California. Section 1404(a) provides for the transfer of a properly filed case "[f]or the convenience of the parties and witnesses."  28 U.S.C. § 1404(a).  It is Gordon's burden to show that California would be a more convenient forum for the parties and witnesses.  *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989). As explained in Section II.C, *supra*, Gordon identifies nothing to suggest California would be more convenient than Georgia for all affected parties. *See PetEdge*, 975 F. Supp. 2d at 1374 (denying motion to transfer, noting that "defendant ignores the fact that a transfer of venue would subject plaintiff's witnesses to the same inconveniences of travel that defendant is seeking to avoid").  Moreover, "the Court must afford plaintiff's chosen forum a substantial degree of deference . . . [t]his is particularly so where, as here, plaintiff has filed suit in his home state."  *Id.* (citations omitted).  As explained in the following section, there is no merit to Gordon's assertion that this case was an "anticipatory action," and Digital Basement's choice of forum therefore should not be afforded any deference.  Accordingly, Gordon's motion to transfer should be denied.

### E. Digital Basement did not file this lawsuit in anticipation of Gordon's threatened litigation

For five months preceding this action (since July, 2014), Gordon had threatened to sue Digital Basement "without further notice."  *See* Section II.C, *supra*.  On three occasions during that period, Gordon sent a list of demands, with deadlines, and stated Digital Basement's non-compliance would result in an "immediate" lawsuit.  In all three instances, Digital Basement did not comply, the deadline passed, and Gordon did not file suit.

Unlike cases finding an anticipatory filing, here there is no evidence Digital Basement sent mixed signals, agreed to a "standstill" on filing claims, or asked for additional time.  Rather, Digital Basement stated it would not comply with Gordon's demands, and did not agree to Gordon's deadline to enter a tolling agreement in furtherance of settlement discussions.

Digital Basement had a right to free itself from the five-month long harassment of Gordon's hollow litigation threats.  Having cried wolf three times without following through on his promise of immediate litigation, Gordon has no basis to argue this suit was filed as an anticipatory action.

## IV.   CONCLUSION

For the reasons stated herein, and at any hearing on this matter, Digital Basement requests that Plaintiff's motion be denied.

25

Date:  March 16, 2015

By: _____

KILPATRICK TOWNSEND & STOCKTON LLP
R. Charles Henn Jr.
Charles H. Hooker III
Michael J. Breslin
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309
Telephone: (414) 815-6500
Fax: (404) 815-6555

E-Mail:      CHenn@KilpatrickTownsend.com
             CHooker@KilpatrickTownsend.com
             MBreslin@KilpatrickTownsend.com

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| DIGITAL BASEMENT, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE |
| | ) | |
| CHRISTOPHER GORDON, | ) | NO. 14-cv-04069-SCJ |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 16, 2015, I served by e-mail and the

Court's ECF system Defendant's foregoing Opposition to Plaintiff's Motion to

Dismiss or Transfer Venue on counsel for Defendant:

> Daniel Reback
> Benjamin J. Smith
> Krane and Smith APC
> 16255 Ventura Blvd Ste 600
> Encino CA 91436
> dreback@kranesmith.com
> bsmith@kranesmith.com

_____
Charles H. Hooker, III